Anthony R. Bisconti, State Bar No. 269230
tbisconti@bklwlaw.com
Carlos A. Nevarez, State Bar No. 324407
cnevarez@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
601 W. 5th Street, Suite 720
Los Angeles, CA 90071
Telephone (213) 528-3400
Facsimile (949) 369-3701

Attorneys for Defendant
Regeneron Pharmaceuticals, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSTY RENDON, an individual<br><br>                    Plaintiff,<br><br>          v.<br><br>REGENERON PHARMACEUTICALS, INC., a New York corporation; DOES 1 - 10, inclusive,<br><br>                    Defendants. | Case No.<br><br>**DEFENDANT REGENERON PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF STATE COURT ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>[Removed from the Superior Court of the State of California, County of Los Angeles Case]<br><br>Los Angeles Superior Court<br>Case No. 22STCV12723<br><br>Action Filed:  April 15, 2022<br>Trial Date:    None Set |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1443, and 1446, Defendant Regeneron Pharmaceuticals, Inc. ("Regeneron") removes to this Court the civil action entitled *Rusty Rendon v. Regeneron Pharmaceuticals, Inc., et al.* (the "Action"), previously pending in the Superior Court of the State of California, County of Los Angeles, Department 52, located at Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012 as Case No. 22STCV12723. Removal of the Action is made on the following grounds:

## I.     PROCEDURAL BACKGROUND

1.     On April 15, 2022, Plaintiff Rusty Rendon ("Plaintiff") filed a complaint in the Superior Court of California, County of Los Angeles, commencing the Action. True and correct copies of the Summons and Complaint are attached to this notice of removal (the "Notice of Removal") as Exhibits 1 and 2, respectively.

2.     On April 19, 2022, Regeneron was purportedly served with a copy of the Summons and Complaint through its registered agent for service of process.

3.     Regeneron files this Notice of Removal within thirty (30) days from the date it was purportedly served with the Summons and Complaint. Accordingly, this removal is timely. 28 U.S.C. § 1446(b).

4.     To Regeneron's knowledge, no other defendant has been served or named. Accordingly, consent for removal of the Action from the fictitious "Doe" defendants is not required.

5.     Regeneron will provide written notice of this Notice of Removal to Plaintiff and any other adverse parties as required by 28 U.S.C. § 1446(d) and will file a copy of this Notice of Removal with the Superior Court of California, County of Los Angeles.

6.     Venue is proper in this Court because the Action is being removed from the Superior Court for the State of California in Los Angeles County.

7.     By removing the Action to this Court, Regeneron does not waive any defenses, objections, or motions available under state or federal law. Regeneron expressly reserves the right to move for dismissal of Plaintiff's claims pursuant to Rule 12 of the Federal Rules of Civil Procedure and/or seek dismissal on grounds of lack of personal jurisdiction, improper venue, or under the doctrine of *forum non conveniens*.

## II.     THE COURT HAS ORIGINAL JURISDICTION OF THE ACTION

### A.     The Court has diversity jurisdiction.

8.     The Action is a civil action over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1332. The Action may be removed pursuant to 28 U.S.C. §§ 1441 because this is a civil action in which there is complete diversity of citizenship between Plaintiff and Regeneron, and the amount in controversy exceeds $75,000.

#### 1.     Complete diversity of citizenship exists.

9.     For purposes of removal, diversity of citizenship is determined at the time the Action was filed and at the time of removal. *See Morongo Band of Mission Indians v. California State Bd. Of Equalization*, 858 F.2d 1376, 1380 (9th Cir.1988).

10.   For purposes of diversity jurisdiction, a person is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place, and [intends] to remain there permanently and/or indefinitely." *Id.* at 749-50.

11.   As alleged in the Complaint, Plaintiff resides in California. Complaint ¶ 8. Therefore, Plaintiff is deemed a citizen of California for purposes of the diversity

1    jurisdiction analysis. *See Barboas v. Trans. Drivers, Inc.*, 2015 WL 9272828, at *3

2    (C.D. Cal. Dec. 18, 2015) (plaintiff was a California citizen because he alleged that

3    he resided in that state); *U.S. Bank, N.A. For Registered Holders of ML-CFC*

4    *Commercial Mortg. Trust 2007-7 v. Miller*, 2013 WL 12183653, at *6 & n. 21 (C.D.

5    Cal. Jan. 16, 2013) (same).

6      12.   "A corporation shall be deemed a citizen of any State by which it has

7    been incorporated and of the State where it has its principal place of business." 28

8    U.S.C. § 1332(c)(1).

9      13.   As alleged in the Complaint, Regeneron is a New York corporation with

10    its principal place of business is in Tarrytown, New York. Complaint ¶ 10.

11      14.   There are no other named defendants in the Action. The citizenship of

12    Doe defendants is not considered for purposes of determining diversity jurisdiction,

13    nor has Plaintiff given any hint as to who else might be named in this lawsuit as a

14    defendant. *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is

15    removable on the basis of the jurisdiction under section 1332(a) of this title, the

16    citizenship of defendants sued under fictitious names shall be disregarded.").

17    Accordingly, the citizenship of any fictitious "Doe" defendant need not be

18    considered for the purpose of ascertaining whether complete diversity exists.

19      15.   Based on the foregoing, complete diversity of citizenship of the parties

20    to the Action exists.

21           **2.     The amount-in-controversy requirement is satisfied.**

22      16.   To show that the amount in controversy requirement is satisfied,

23    Regeneron need only demonstrate, by a preponderance of evidence, that Plaintiff's

24    claims meet the jurisdictional limits. 28 U.S.C. § 1446(c)(B). The Court can and

25    should consider all recoverable damages sought by Plaintiff, including

26    compensatory damages, punitive damages, statutory penalties, and attorneys' fees.

27    *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). The Court

28

may also consider the value of nonmonetary relief sought. 28 U.S.C. § 1446(c)(2)(A)(i).

17.   Regeneron satisfies its burden of establishing that the jurisdictional limit is met by establishing that it is "more likely than not" that the amount in controversy exceeds $75,000. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

18.   As the Supreme Court has explained, "by borrowing the familiar 'short and plain statement' standard" from Rule 8(a) of the Federal Rules of Civil Procedure, Congress "clarif[ied] that courts should apply the same liberal rules [to removal allegations] that are applied to other matters of pleading." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 552 (2014) (internal citations omitted). The "short and plain statement" requirement in removal notices must merely allege the basis for federal jurisdiction "plausibly" but "need not contain evidentiary submissions" to support such allegations. *Id.* at 551 (internal citations omitted). Thus, "a removing party's notice of removal need not meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint." *Ellenburg v. Spartan Motors Chassis Inc.*, 519 F.3d 192, 200 (4th Cir. 2008).

19.   Moreover, if the Court has any doubts as to the removing party's allegations, the Court must give the parties an opportunity to proffer evidence concerning the allegations – and only at that point can the Court decide whether preponderance of the evidence shows that the amount in controversy is satisfied. *See Dart Cherokee*, 135 S. Ct. at 554 ("Evidence establishing the amount is required . . . when . . . the court questions[] the defendant's allegation."); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (same).

20.   Here, Plaintiff seeks monetary damages, attorneys' fees and costs, and nonmonetary relief. *See* Complaint at 11. While Regeneron disputes any liability in

1   this case, a review of the damages potentially recoverable under the Unruh Civil

2   Rights Act, California Civil Code § 51 *et seq.* (the "Unruh Act") and Plaintiff's

3   theory of liability, which involves allegedly repeating claims and ongoing

4   violations, establishes that the value of the damages recovery sought by Plaintiff

5   and cost to Regeneron satisfies the "good faith" requirement for purposes of

6   removal under 18 U.S.C. §1446(c)(2).

7       21.   While Plaintiff purports to "limit" his damages to $74,999 in monetary

8   damages—in a transparent attempt to try to avoid the Court's jurisdiction—

9   Regeneron's conservative and good faith estimate of the value of Plaintiff's claims

10  in this Action, if Plaintiff prevails and recovers damages on his claims, will exceed

11  $75,000 in damages, attorneys' fees and costs, and the cost of the non-monetary

12  relief sought.

13      22.   With respect to statutory damages, the Unruh Act permits recovery of a

14  minimum of $4,000 "for each and every offense" of its provisions. Cal. Civ. Code

15  § 52(a). Here, Plaintiff alleges in the Complaint that he has been denied full land

16  equal access to Regeneron's website "multiple times in the past" and that he has

17  been deterred "on a regular basis from accessing Defendant's Website." *See*

18  Complaint ¶ 8; *see also id.* ¶ 24 (alleging "numerous access barriers contained on

19  Defendant's website [that] have denied Plaintiff's full and equal access, and

20  deterred Plaintiff on a regular basis from accessing the Website.").

21      23.   Based on Plaintiff's allegations in the Complaint, he is clearly seeking

22  to establish liability based on multiple alleged "offenses" at a minimum of $4,000

23  in damages per offense.

24      24.   In addition to statutory damages in the amount of $4,000 per offense,

25  the Unruh Act provides that attorneys' fees are recoverable for prevailing parties.

26  Accordingly, attorneys' fees and costs are appropriately considered when assessing

27

28

the amount in controversy. Cal. Civ. Code § 52(a); *see also Galt G/S*, 142 F.3d at 1155-56.

25.   Based on Regeneron's counsel's hourly rates and practices, which are in line with the prevailing market in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, and the estimated amount of time it will take to litigate this Action through trial, the attorneys' fees alone that will be incurred in this case will far exceed the jurisdictional limit of $75,000, even with Plaintiff's purported attempt to cap recovery at $74,999.

26.   The cost of nonmonetary relief at issue is also considered by courts when evaluating whether the amount in controversy is satisfied. 28 U.S.C. § 1146(c)(2)(A)(i).

27.   Plaintiff's Complaint seeks, among other damages and relief, "a preliminary and permanent injunction requiring Defendant to take the steps necessary to make the Website . . . readily accessible to and usable by visually-impaired individuals." Complaint at 11.

28.   While Plaintiff has identified *some* of the technical issues he has with Regeneron's website, he has not provided an exhaustive list of his complaints or demands.  Complaint ¶ 22 ("The Website's barriers are pervasive and include, *but are not limited to*, the following . . .") (emphasis added). Plaintiff does, however, specify several technical and esoteric grievances regarding Regeneron's website, such as:

- "Empty or missing form labels";
- "Multiple form labels";
- "Empty buttons";
- "Empty links that contain no text";
- "Broken ARIA references"; and
- a "Broken ARIA menu."

Complaint ¶ 22. Plaintiff also points generally to Web Content Accessibility Guidelines ("WCAG 2.1") published by an organization named W3C when alleging Regeneron's purported noncompliance with accessibility requirements. *See e.g.,* Complaint ¶ 18.

29.   In the Ninth Circuit, "the test for determining the amount in controversy is the pecuniary result to *either party* which the judgment would directly produce." *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir 2001) (emphasis added).

30.   While Regeneron does not admit liability for any amount of damages, the purported issues that Plaintiff has allegedly encountered could not be mended with a simple fix (if they existed) but would require Regeneron to retain the services of software engineers, third-party platform agencies, and/or other internal and external IT professionals to undertake significant work on Regeneron's website. If Plaintiff prevailed and obtained injunctive relief for his alleged grievances, Regeneron would be forced to hire computer specialists (and perhaps other accessibility consultants) who are familiar with the type of digital modifications that Plaintiff demands in this case. To effectuate these substantive modifications and coordinate with external vendors, Regeneron would be required to sustain substantial internal employee time at great cost to the company.

31.   In short, to take all the measures necessary to implement and address the alleged issues on its website about which Plaintiff complains would require Regeneron to hire individuals whose time, services, and expertise comes at a high cost and will easily exceed the jurisdictional threshold for removal based on diversity jurisdiction. While Plaintiff's Complaint states that Plaintiff would purportedly limit the cost of injunctive relief such that Regeneron would not have to expend more than $20,000 as the cost of injunctive relief, *see* Complaint at 11, that is not plausible nor realistic.  It is clear from the nature of Plaintiff's claims and

his requested injunctive relief that the administrative and technological costs that Regeneron needs to expend to modify its website will far surpass $20,000—and based on discussions with outside experts in the field of website design and accessibility, Regeneron is informed and believes that the cost of the injunctive relief sought by Plaintiff in the Complaint alone may exceed $75,000.

32. Accordingly, the amount in controversy in this Action exceeds the requisite minimum of $75,000.

**B.    The Court has federal question jurisdiction.**

33. The Action is also a civil action over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1331. The Action may be removed pursuant to 28 U.S.C. §§ 1441 and 1443 because it appears from the face of the Complaint that Plaintiff has filed a civil rights action and his claims are founded on a claim or right arising under the laws of the United States.

34. The Complaint seeks injunctive (nonmonetary) relief and money damages against Regeneron pursuant to the Unruh Act. From the face of the Complaint, it appears that Plaintiff's claims are based solely upon alleged violations of the federal Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.* (the "ADA"). *See, e.g.*, Complaint at ¶¶ 2, 3, 9, 11, 29). Because the Complaint seeks injunctive relief and is premised upon violations of the federal ADA, the Court has federal question jurisdiction.

35. Additionally, the Court has federal question jurisdiction because the Complaint presents a substantial, disputed question of federal law as a necessary element to Plaintiff's claims.

**III.   CONCLUSION**

For the reasons set forth above, Regeneron requests that this Court remove the Action from the Superior Court for the State of California, County of Los Angeles to this Court.

1   Dated: May 17, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted:

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By:     /s/ Anthony R. Bisconti
        Anthony R. Bisconti
        Carlos A. Nevarez
        Attorneys for Defendant Regeneron
        Pharmaceuticals, Inc.

REGENERON PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF STATE
COURT ACTION TO THE UNITED STATES DISTRICT COURT

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 601 W. 5th Street, Ste. 720, Los Angeles, California 90071; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **DEFENDANT REGENERON PHARMACEUTICALS, INC.'S NOTICE OF REMOVAL OF STATE COURT ACTION TO THE UNITED STATES DISTRICT COURT** on all interested parties as follows:

PACIFIC TRIAL ATTORNEYS
Scott J. Ferrell
Victoria C. Knowles
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
sferrell@pacifictrialattorneys.com
vknowles@pacifictrialattorneys.com
*Attorneys for Plaintiff Rusty Rendon*

**[X] BY ELECTRONIC TRANSMISSION:** by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case.

**[X] BY MAIL** - I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 17, 2022 at Los Angeles, California.

/s/ Elizabeth Garcia
Elizabeth Garcia